Alycia A. Degen (Bar No. 211350)
adegen@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
Telephone:  (424) 285-8330
Fax:  (424) 204-9093

Matthew O. Sitzer (*pro hac vice forthcoming*)
Matthew C. Wolfe (*pro hac vice forthcoming*)
Samuel G. Bernstein (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive, Suite 4700
Chicago, IL  60606
Telephone:  (312) 704-7700
Fax:  (312) 558-1195

*Counsel for Plaintiff Liberty Surplus Insurance Company*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| LIBERTY SURPLUS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>GIB, LLC D/B/A BRAZILIAN BLOWOUT and BRAZILIAN PROFESSIONALS, LLC,<br><br>Defendants. | Case No. 2:25-cv-1090<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Liberty Surplus Insurance Company ("Liberty Surplus") brings this Complaint for Declaratory Judgment against Defendants GIB, LLC d/b/a "Brazilian Blowout" ("GIB") and Brazilian Professionals, LLC ("Brazilian Professionals"), and alleges as follows:

# NATURE OF THE ACTION

1. This is an insurance-coverage declaratory judgment action to establish that, under its respective policy, Liberty Surplus has no defense, indemnity or other obligation to GIB and Brazilian Professionals in connection with an underlying lawsuit.

2. On October 3, 2023, Amanda Garavaglia, John Garavaglia, and M.M., a minor (whose claims are being pursued by M.M.'s legal guardians, Kirk and Megan Matson, as her next friends) (collectively, "Underlying Claimants") sued GIB and Brazilian Professionals alleging that they manufacture, design, market, sell, advertise, and promote hair straightening products under the trade name "Brazilian Blowout." *See* Ex. 1 ¶ 18, First Amended Petition, *Amanda Garavaglia, et al. v. Brazilian Professionals, LLC et al.*, No. 2316-CV26217 (Cir. Ct. of Jackson County, Missouri) ("Garavaglia Action"). Underlying Claimants allege that the Brazilian Blowout products contain a range of carcinogens and endocrine-disrupting compounds, including formaldehyde, phthalates, parabens, cyclosiloxanes, and metals, which they refer to collectively as the "hazardous chemicals." *Id.* ¶ 19.

3. The Underlying Claimants allege that no later than 2008, GIB and Brazilian Professionals were aware that their products "specifically exposed users to formaldehyde and at levels far exceeding the recommended limits." *Id.* ¶ 25.

4. The underlying lawsuit alleges that GIB and Brazilian Professionals nonetheless continued to market the product as safe "without providing adequate warnings or instructions for safe use." *See id.* at ¶¶ 25-74.

5. The underlying lawsuit alleges that Amanda Garavaglia is a hairstylist and was frequently exposed to the Brazilian Blowout products in the course of her work. *Id.* ¶ 75. It claims that she first began providing Brazilian Blowout services in 2008, and has been exposed to the products and the unsafe levels of formaldehyde continuously through today, causing her injuries that included

infertility, uterine cancer, ovarian cancer, a double mastectomy, and related breast reconstruction surgeries. *Id.* ¶ 80.

6. Amanda Garavaglia was diagnosed with cancer in 2015.

7. The lawsuit also brings claims on behalf of Amanda Garavaglia's husband, John Garavaglia, for loss of consortium. *Id.* ¶¶ 85, 149-50.

8. Separately, the underlying lawsuit brings claims on behalf of M.M. *See id.* at ¶¶ 86-94. It alleges that M.M.'s mother, Megan Matson, was exposed to Brazilian Blowout products while providing hairstylist services while pregnant with M.M. in 2014. *Id.* ¶¶ 86, 90. M.M. later was diagnosed with leukemia, which the underlying lawsuit alleges was caused by her exposure to the hazardous chemicals in the Brazilian Blowout products. *Id.* ¶¶ 90-94.

9. Despite the Garavaglia Action being originally filed on October 3, 2023, Liberty Surplus first became aware of the underlying lawsuit when it was submitted to Liberty Surplus for the first time on January 22, 2025. The underlying lawsuit is currently set for trial on February 10, 2025.

10. Upon information and belief, GIB seeks to have both itself and Brazilian Professionals indemnified by Liberty Surplus for the claims brought by the Underlying Claimants.

11. However, the Policy was issued to named insured GIB LLC d/b/a Brazilian Blowout. Brazilian Professionals is not an insured under the Policy and Liberty Surplus has no obligations to Brazilian Professionals under the Policy relating to the Garavaglia Action.

12. In addition, as discussed in more detail below, as to both GIB and Brazilian Professionals to the extent Brazilian Professionals is an insured, coverage is unavailable under the Policy for the Lawsuit.

## THE PARTIES

13. Plaintiff Liberty Surplus is a New Hampshire corporation with its principal place of business located in Boston, Massachusetts.

14. Upon information and belief, Defendant GIB is a limited liability company with two members, Monte Deven Semler and Britney Joy Hunker. Upon information and belief, Semler and Hunker both are domiciled in California and are California citizens.

15. Upon information and belief, Defendant Brazilian Professionals is a limited liability company with two members, Gary Eisenberger and Shane Semler. Upon information and belief, Eisenberger and Semler both are domiciled in California and are California citizens.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the matter, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the Plaintiffs and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17. This Court has personal jurisdiction over both GIB and Brazilian Professionals because they are citizens of, and at home in, California. Additionally, the Policy was issued by Liberty Surplus to GIB in California, and this dispute arises out of the Policy.

18. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because GIB and Brazilian Blowout reside in this District. Alternatively, venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

## THE LIBERTY SURPLUS INSURANCE POLICY

19. Liberty Surplus issued a Commercial General Liability Policy (the "Policy") to GIB LLC DBA: Brazilian Blowout, Policy No. DGLLA150259-1, with

a policy period of July 1, 2011 to July 1, 2012.  A true and complete copy of the Policy is attached as Exhibit 2.

20. The Policy provides in relevant part:

## SECTION I – COVERAGES

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

        **(1)**  The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE; and

        **(2)**  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **(2)**  The "bodily injury" or "property damage" occurs during the policy period.

    **c.**  Damages because of "bodily injury" include damage claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2.    Exclusions**

This insurance does not apply to:

      **a.**    **Expected Or Intended Injury**

          "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

          \*   \*   \*

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by person, including death resulting from any of these at any time.

          \*   \*   \*

**13.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

          \*   \*   \*

**B.**    **Who is an insured**

With respect to who is an insured, the Policy states in pertinent part:

          SECTION II – WHO IS AN INSURED

**1.**    If you are designated in the Declarations as:

          \*   \*   \*

      **c.**    A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

          \*   \*   \*

          **ADDITIONAL EXCLUSIONS ENDORSEMENT**

          \*   \*   \*

**Exclusion – Known Injury or Loss**

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" which began prior to the inception date of this policy, and which is alleged to continue into the policy period.

      This exclusion applies whether or not:

          1.    The damage or its cause was known to any insured before the inception date of this policy;

2. Repeated or continued exposure to conditions causing such "bodily injury", "property damage" or "personal and advertising injury" occurred during the policy period or caused additional or progressive "bodily injury", "property damage" or "personal and advertising injury" during the policy period; or

3. The insured's legal obligation to pay damages was established as of the inception date of this policy.

## THE UNDERLYING GARAVAGLIA ACTION

21. The Garavaglia Action brings claims on behalf of three plaintiffs: Amanda Garavaglia, John Garavaglia, and M.M., a minor (the claims are being pursued by M.M.'s legal guardians as her next friends). Ex. 1 ¶¶ 1-4.

22. It names as defendants GIB, Brazilian Professionals, and SSG, LLC.[1] *Id.* ¶¶ 5-9.

23. The Lawsuit alleges that GIB and Brazilian Professionals manufacture, design, market, sell, advertise, and promote hair straightening products under the trade name "Brazilian Blowout." Ex. 1 ¶¶ 18. It alleges that the Brazilian Blowout products contain unsafe levels of formaldehyde and other hazardous chemicals. Ex. 1 ¶¶ 19.

24. It alleges that no later than 2008, GIB and Brazilian Professionals were aware that their products "specifically exposed users to formaldehyde and at levels far exceeding the recommended limits." Ex. 1 ¶¶ 25.

25. The First Amended Petition cites numerous publicly-available articles, studies, press releases, and other materials indicating that, between 2008 and 2011, numerous government agencies, news organizations, and other interested parties had found that the products contained unsafe levels of formaldehyde, and that GIB and Brazilian Professionals were aware of these results and of the fact that the products were unsafe. Ex. 1 ¶¶ 25-47.

---

[1] On December 20, 2024, Plaintiffs voluntarily dismissed SSG, LLC from the underlying lawsuit.

7

COMPLAINT FOR DECLARATORY JUDGMENT

26. For example, the Lawsuit alleges that *Allure* magazine exposed Brazilian Blowout products as unsafe in 2008, leading to numerous government investigations and lawsuits in 2008, 2009, 2010, and 2011. Ex. 1 ¶¶ 25, fn. 1 ("based on FDA lab testing, found that Brazilian Blowout products contained formaldehyde well beyond the 0.2% threshold."); 22-24. Those investigations and lawsuits repeatedly indicated that the Brazilian Blowout products were unsafe.

27. The investigations, studies, and lawsuits issued prior to Liberty Surplus' July 1, 2011, Policy, include, but are not limited to:

 a. July 2010, the California Attorney General learned through the Safe Cosmetics Program staff at the California Department of Public Health that complaints had been made the Oregon Health & Science University's ("OHSU") toxicology information center by hair stylists regarding adverse effects from exposure to GIB's Smoothing Solution.

 b. September and October 2010, the Oregon Occupational Safety & Health Division ("Oregon OSHA") and OHSU issued press releases regarding their finding of high levels of formaldehyde in samples of GIB's Smoothing Solution and issued a "Hazard Alert" regarding occupational risks posed by formaldehyde in hair products.

 c. October 6, 2010, Health Canada announced the Brazilian Blowout product contained 60 times the amount of formaldehyde permitted by Health Canada, and on October 7, 2010, Health Canada issued a Cessation Order, banning the products' use in Canada.

 d. On October 8, 2010, a Canadian Class Action was instituted against Brazilian Blowout. *Ryley v. Brazilian Blowout, Inc., et al.*, Case No. 10 4081 Victoria Registry pending in the Supreme Court of British Columbia (the "Canadian Class Action").

e. On October 29, 2010, Oregon OSHA and OHSU subsequently published an in-depth, peer reviewed report concluding that multiple Smoothing Solution samples contained high levels of formaldehyde.[2]

f. On November 5, 2010, a class action complaint was filed against GIB, LLC entitled, *In re Brazilian Blowout* litigation, Case No. CV10-8452 JFW (Manx), which alleged injuries arising out of exposure to GIB's Brazilian Blowout Smoothing Solution. On April 12, 2011, the Court granted Plaintiffs' Motion for Class Certification.

g. On November 10, 2010, based on results of the various tests, the California Attorney General sought a preliminary injunction and civil penalty against GIB's seeking a preliminary injunction against the sale of Smoothing Solution. *See People of the State of California v. GIB, LLC*, Alameda County Superior Court, Case No. RG10545880.

h. In addition, in 2010 and 2011, numerous other complaints were filed against GIB in Superior Court of the State of California. These complaints are as follows: (1) *Noiman, et al. v. Brazilian Blowout, LLC, et al.*, Los Angeles County Superior Court Case No. BC 447221; filed on October 12, 2010; (2) *Jessica Anderson v. Brazilian Blowout, LLC, et al.*, Los Angeles County Superior Court Case No. BC 448687; filed on November 2, 2010; (3) *January Blandford v. GIB, LLC, et al.*, Los Angeles County Superior Court Case No. BC 449199 filed on November 9, 2010; (4) *Isaac Cohen v. GIB, LLC, et al.*, Los Angeles County Superior Court Case No. BC 450236, filed on November 24,

---

[2] In response to the Oregon OSHA and OHSU findings, Brazilian Blowout filed a Complaint against various Oregon State agencies alleging that they had "manipulated testing protocol in an attempt to harm Plaintiff [GIB]" and endeavored to "scare the public and create a false perception that the product was unsafe, dangerous, and unhealty." GIB voluntarily dismissed this case in response to a threat from the Oregon Attorney General's office that they would move to strike the Complaint as a "SLAPP suit."

2010; (5) *Casamento v. Colours Hair Salon, et al.*, Los Angeles County Superior Court Case No. BC 451798 filed on December 23, 2010; (6) *Luzmila Contreras v. GIB, LLC, et al.*, Los Angeles County Superior Court Case No. BC 454734, filed on February 9, 2011; (7) *Daluiso, et al. v. Brazilian Blowout, Inc., et al.*, San Diego County Superior Court Case No. 37-2010-00103537-CU-NP-CTL filed on November 3, 2010; (8) *Meints, et al. v. GIB, LLC, et al.*, San Diego County Superior Court Case No. 37-2010-00063019-CU-OE-NC, filed December 23, 2010.[3]

    i.    Brazilian Blowout has also been the subject of product recalls in Canada, Ireland, and Australia.

28. Despite these investigations and lawsuits, GIB and Brazilian Professionals continued to claim that the products were safe – and did so with knowledge that those claims were false, according to the Lawsuit. Ex. 1 ¶¶ 26, 30, 34, 45, 48, 51, 98(e), 126-28.

29. The Lawsuit alleges that despite knowing the products were unsafe, GIB and Brazilian Professionals nonetheless continued to market the products as safe "without providing adequate warnings or instructions for safe use." *See* Ex. 1 ¶¶ 25-74.

30. The Lawsuit alleges that Amanda Garavaglia is a hairstylist and frequently was exposed to the products in the course of her work. It claims that she first began providing Brazilian Blowout services in 2008, and has been exposed to

---

[3] Each of these eight cases cited above were class action complaints. In addition, these eight class actions, and the California AG's case, revolved around the same core factual allegations regarding exposure to GIB products. Because of the common allegations in these complaints, on February 17, 2011, GIB made a motion to coordinate the referenced individual complaints and the Attorney General Litigation. On April 4, 2011, Judge Carl West of the Los Angeles Country Superior County Court, Complex Division, granted GIB's motion for coordination and issued an order consolidating the above referenced cases into a coordinated proceeding. On June 20, 2011, the plaintiffs filed their Consolidated Class Action Complaint for, among other things, intentional misrepresentation, and common law fraud and conspiracy to commit common law fraud.

1  the products continuously through today, causing her injuries that included
2  infertility, uterine cancer, ovarian cancer, a double mastectomy, and related breast
3  reconstruction surgeries.  Ex. 1 ¶ 80.

4    31. Amanda Garavaglia's injuries at issue in the Lawsuit were first
5  diagnosed in 2015.

6    32. The Lawsuit also brings claims on behalf of Amanda Garavaglia's
7  husband, John Garavaglia, for loss of consortium arising from Amanda Garavaglia's
8  injuries.  Ex. 1 ¶¶ 85, 149-150.

9    33. Separately, the Lawsuit brings claims on behalf of M.M.  *See* Ex. 1 ¶¶
10 86-94.  It alleges that M.M.'s mother, Megan Matson, was exposed to Brazilian
11 Blowout products while providing hairstylist services while pregnant with M.M. in
12 2014.  Ex. 1 ¶¶ 86, 90.  M.M. later was diagnosed with leukemia, which the Lawsuit
13 alleges was caused by her exposure to the hazardous chemicals in the products.  Ex.
14 1 ¶¶ 90-94.

15   34. The First Amended Petition asserts causes of action for Negligence,
16 Negligent Training and Instruction, Strict Liability – Design Defect, Strict Liability
17 – Failure to Warn, Fraudulent Concealment/Misrepresentation, Breach of Implied
18 Warranty of Merchantability or Fitness for Particular Purpose, Breach of Express
19 Warranty, and Loss of Consortium (on behalf of John Garavaglia).

## APPLICATION OF THE POLICY

21   35. The Policy applies only to "those sums that the insured becomes legally
22 obligated to pay as damages because of 'bodily injury' . . . to which this insurance
23 applies."

24   36. The Policy applies only if "bodily injury" is caused by an "occurrence"
25 during the policy period.

26   37. The Policy does not cover any of the injuries suffered by any of the
27 Underlying Claimants.

28

38. First, John Garavaglia seeks only damages for loss of consortium with his wife Amanda Garavaglia following her cancer diagnosis in 2015. Such damages do not constitute "bodily injury" to John Garavaglia.

39. Furthermore, the injuries allegedly suffered by underlying plaintiff John Garavaglia would have occurred starting in 2015, which was entirely after the Liberty Surplus policy period ended on July 1, 2012.

40. Accordingly, Mr. Garavaglia's claims are not covered by the Policy.

41. Second, M.M. alleges exposure to the Brazilian Blowout products beginning when she was *in utero* in 2014. Ex. 1 ¶¶ 86, 90. To the extent the injuries alleged by M.M. are "bodily injury" caused by an "occurrence" at all, her injuries took place outside of the policy period and are not covered.

42. Third, Amanda Garavaglia alleges that her exposure to Brazilian Blowout products lasting from 2008 to the present caused her cancer in 2015 and other injuries in later years. Amanda Garavaglia's injuries were diagnosed after the conclusion of the policy period and therefore are not covered.

43. To the extent that Amanda Garavaglia claims that she suffered bodily injury upon exposure to the product beginning in 2008 and continuing between July 1, 2011 and July 1, 2012, the Policy's Known Injury or Loss Exclusion precludes coverage.

44. Additionally, and in the alternative, the Garavaglia Lawsuit alleges, repeatedly and consistently, that GIB and Brazilian Professionals know that their products were dangerous no later than 2008, but engaged in a campaign of knowing deception that misled consumers, including the Underlying Claimants, into using the products, which allegedly caused the Underlying Claimants' injuries.

45. The Policy only covers bodily injury caused by an "occurrence," which is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

46. The Policy also excludes "bodily injury" "expected or intended from the standpoint of the insured."

47. The Garavaglia Action is premised on the contention that GIB's and Brazilian Professionals' conduct was no accident and that GIB and Brazilian Professionals foresaw the harm their products would cause hairstylists and their *in utero* children, but instead intentionally deceived the Underlying Claimants and the public by claiming the products were safe. Such claims are not covered by the Policy, or as a matter of public policy.

48. Furthermore, GIB did not notify Liberty Surplus of the Lawsuit until January 23, 2025.

49. Thus, notice to Liberty Surplus was provided for the first time less than three weeks before trial, and just days before a mediation set for the eve of trial. Upon information and belief, GIB's last-minute notice to Liberty Surplus was a calculated effort to deprive Liberty Surplus of the ability to conduct a proper and thorough investigation of the claim and the Garavaglia Action.

## COUNT I

## DECLARATORY JUDGMENT AS TO BRAZILIAN PROFESSIONALS, LLC – NOT AN INSURED

50. Liberty Surplus restates and incorporates all preceding paragraphs into this Count I.

51. Liberty Surplus has no obligation to Brazilian Professionals, LLC ("Brazilian Professionals"), because Brazilian Professionals is not an insured on the Policy.

52. The Policy was issued to named insured GIB, LLC DBA: Brazillian Blowout.

53. Brazilian Professionals is a separate corporate entity from GIB, LLC. Brazilian Professionals is not a named insured on the Policy and is not made an insured through any provision of the policy.

54. Accordingly, there is no coverage available to Brazilian Professionals under the Policy.

55. In the alternative, even if Brazilian Professionals were an insured on the Policy, there would be no duty owed to Brazilian Professionals under the Policy for the reasons set forth in Count II below.

## COUNT II
## DECLARATORY JUDGMENT AS TO ALL DEFENDANTS – NO DUTY TO DEFEND OR INDEMNIFY

56. Liberty Surplus restates and incorporates all preceding paragraphs into this Count II.

57. No defense or indemnity coverage is available under the Policy for any of the injuries alleged by any of the three Underlying Claimants.

58. John Garavaglia's alleged injuries are not "bodily injury," because they are solely emotional. Furthermore, John Garavaglia's alleged injuries all occurred after the conclusion of the Liberty Surplus policy period on July 1, 2012.

59. M.M.'s alleged injuries all occurred after the conclusion of the Liberty Surplus policy period on July 1, 2012.

60. Amanda Garavaglia's alleged injuries all occurred after the conclusion of the Liberty Surplus policy period on July 1, 2012. To the extent that Amanda Garavaglia is claiming in the Lawsuit that she was injured by her exposure to Brazilian Blowout products prior to the diagnosis of her diseases, that exposure began in 2008, before the inception of the Policy. Thus, any "bodily injury" caused by that exposure would be excluded by the Known Injury or Loss Exclusion, which

states that this insurance does not apply to "bodily injury" that began prior to the inception date of the Policy regardless of whether the damage or its cause was known to any insured before the inception of the Policy.

61. Additionally, and in the alternative, Defendants' conduct is not alleged to have been an accident, and therefore any bodily injury potentially covered by the Policy would not have been caused by an "occurrence," as is required by the Policy. Additionally, and also in the alternative, for similar reasons, the expected or intended exclusion would preclude coverage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Liberty Surplus Insurance Company respectfully requests the Court enter the following relief:

A. For judgment declaring that, under their respective Commercial General Liability Policy, Liberty Surplus has no obligation to defend or to indemnify GIB LLC nor Brazilian Professionals, LLC in relation to the Garavaglia Action;

B. For costs and other similar relief as permitted by law;

C. Such other, further, or different relief to which Plaintiff may be entitled under law and equity.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted,

By: */s/ Alycia A. Degen*
Alycia A. Degen
Attorney for Plaintiff
Liberty Surplus Insurance Company